UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KELLY SARBACHER, an individual,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>AMERICOLD REALTY TRUST, an Oregon corporation; and AMERICOLD LOGISTICS, LLC, a Delaware Limited Liability Company,<br><br>　　　　　　　　Defendant. | Case No. 1:10-cv-429-CWD<br><br>**MEMORANDUM ORDER** |

## INTRODUCTION

Before the Court is Defendants' Motion to Compel, filed on May 18, 2011. (Dkt. 25.) The Court expedited the briefing schedule, and conducted a telephonic hearing on June 8, 2011. The matter is now fully briefed and ripe for the Court's review. Based upon the analysis below, the Court will deny the motion.

## BACKGROUND

Plaintiff Kelly Sarbacher filed a complaint on July 12, 2010, against his former employer, Americold, alleging he was owed severance pay under a written employment agreement. Plaintiff asserts that his employment agreement entitled him to severance pay

**MEMORANDUM ORDER - 1**

upon termination if his employment was terminated without his consent and not for "cause" as defined under the agreement. Plaintiff claims he is owed "wages" in the form of unpaid but owed severance pay under Idaho's Wage Claim Act, Idaho Code § 45-601.

Defendants deny that they terminated Plaintiff's employment improperly under the agreement, and instead contend that Plaintiff's employment was terminated for cause, thereby not entitling Plaintiff to severance pay. Defendants contend that the decision to terminate the employment relationship was based upon Plaintiff's deliberate falsification of inventory statistics at one of the two facilities he managed.

Defendants also contend that, during their investigation before finalizing the termination decision, there were rumors that while clocked in on company time, Plaintiff was not actually at work. However, the investigation did not result in verification of these rumors, other than employees indicating that Plaintiff was at the facility only one or two days each week, and available solely by e-mail. Defendants assert that their investigation was unable to verify Plaintiff's whereabouts because they did not have access to Plaintiff's personal records.

Defendants seek production of Plaintiff's personal financial records, which include debit, bank, and credit card expenditures, between June 2, 2007, up through the date his employment was terminated on June 2, 2010. Defendants claim that this information is relevant to their claim that Plaintiff spent the majority of his working days golfing or attending to personal matters. Defendants acknowledge that debit, bank, and credit card expenditures may not be posted to the cardholder's account on the day the transaction

**MEMORANDUM ORDER - 2**

occurred, but claim the information would be relevant during depositions to enable them to question Plaintiff as to his whereabouts, and it would either confirm or deny their suspicions that Plaintiff was attending to personal business rather than managing the inventory at Defendants' warehouse facility.

Plaintiff objects to production of the requested records, his primary argument being that the information is not related to the after-acquired evidence defense that Defendants have alleged. Plaintiff asserts that his employment was terminated for his role in allegedly falsifying inventory records, not for his failure to be present at the facility. Therefore, he contends the information Defendants seek to discvover is not relevant. And, Plaintiff contends that the after-acquired evidence defense is applicable only when the information was unknown at the time of the termination decision, contrary to the situation here, where Defendants were aware of rumors Plaintiff attended to personal business while clocked in on company time. Further, Plaintiff objects on the grounds that the request is overbroad, as there is no method to determine whether the charges were incurred during authorized breaks, and Defendants seek three years of such records.

## DISPOSITION

Discovery is permitted "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Evidence is relevant if the evidence has any tendency to "make the existence of any fact that is of consequence to

**MEMORANDUM ORDER - 3**

the determination of the action more probable or less probable that it would be without the evidence." Fed. R. Evid. 401. Although parties are not given unfettered license to obtain all information, no matter how tangentially relevant it might be, Rule 26(b)(1) is construed broadly to "encompass any matter that bears on, or that reasonably could lead to other matter that bears on, any issue that is or may be in the case." *Oppenheimer Fund, Ind. v. Sanders*, 437 U.S. 340, 350 (1978).

The "after-acquired evidence" doctrine precludes or limits an employee from receiving remedies for wrongful discharge if the employer later "discovers" evidence of wrongdoing that would have led to the employee's termination from employment had the employer known of the misconduct. *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 360-63, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). Under such circumstances, "[a]n employer can avoid backpay and other remedies by coming forward with after-acquired evidence of an employee's misconduct, but only if it can prove by a preponderance of the evidence that it would have fired the employee for that misconduct." *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 761 (9th Cir.1996). The doctrine can be used to limit damages by preventing an award of front pay and reinstatement. *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1071 (9th Cir. 2004).

In the instant case, the after-acquired evidence doctrine does not apply as a basis for permitting the requested discovery. The legal principal is available to limit remedies for wrongful discharge brought under the civil rights laws or other laws which permit claims for back and front pay as damages. In this case, Plaintiff asserts a wage claim

under state law premised on breach of a written employment agreement. In addition, the after-acquired evidence doctrine is forward looking, limiting damages for front pay and reinstatement, whereas the damages in this case are limited to severance pay allegedly due upon separation from employment. Therefore, the doctrine does not apply under the facts before the Court.

As for relevance, the Court agrees that the evidence may be relevant in the context of Defendants' claim that Plaintiff engaged in fraudulent activity by misrepresenting inventory levels. Defendants assert the motive behind Plaintiff's falsification of the records was because he was not on site and was otherwise engaged in personal pursuits on company time. One of Defendants' theories is that Plaintiff had no time to devote to correcting the problem, because he was not at Defendants' warehouse facility working. Defendants seek to prove their theory by questioning Plaintiff about his whereabouts on company time, and contend Plaintiff's personal expenditures would illuminate Plaintiff's activities during work hours.

While the information may have some relevance to Defendants' motive theory, Defendants represent Plaintiff's employment was terminated for the role Plaintiff allegedly had in falsifying inventory levels. Defendants undertook an investigation based upon information received from other employees that Plaintiff was absent from the warehouse site most of the time, but Defendants' investigators were unable to corroborate the information. Despite being unable to corroborate the rumors, it appears Defendants believed Plaintiff's employment was terminated justifiably on the sole grounds that

**MEMORANDUM ORDER - 5**

Plaintiff allegedly falsified inventory records. Therefore, bathed in that context, Plaintiff's off-site activities are marginally relevant at best. Plaintiff's alleged falsification of Defendants' inventory records could have occurred while Plaintiff was on site at Defendants' warehouse; Plaintiff's whereabouts have little to no bearing upon the facts that are of consequence to determination of this action, which are the allegedly falsified records.

In addition, it is unclear how much value the personal financial records will have, if at all, considering there will be no indication from the records themselves of the actual date, time, or place the personal charges were incurred, by whom they were authorized, or how long Plaintiff may have spent incurring each of the charges. As Defendants acknowledge, bank, debit and credit card statements reflect when the charge was posted, not when the charge was incurred, by whom it was incurred, or where the person was physically located at the time the charge was incurred. As for the time spent doing so, the charge could have been made over the phone or the internet while at work, or perhaps Plaintiff spent fifteen minutes on his lunch break taking care of personal business. The Court can envision any number of scenarios which would have no bearing upon this case. Accordingly, the records requested would have extremely limited utility, and are therefore not "reasonably" calculated to lead to the discovery of admissible evidence.

Finally, there appear to be other methods of obtaining the same information that would appear reasonably calculated to lead to the discovery of admissible evidence. For instance, Defendants mentioned other employees may have had personal knowledge of

**MEMORANDUM ORDER - 6**

Plaintiff's whereabouts when not working, such as when he was allegedly golfing on company time. If Defendants believe Plaintiff was engaged in playing golf, golf course records may provide more reliable information as to the actual date, time, and length of play. Or, records such as a calendar likely would provide more accurate information without divulging as much information about Plaintiff's personal financial business than is likely to lead to the discovery of admissible evidence relevant to Defendants' motive theories. Accordingly, the motion is denied.

Rule 37(a)(5)(B) states the Court "must" require the movant to pay the party who successfully opposed the motion its reasonable expenses incurred in opposing the motion, including attorney fees, unless the Court finds the motion was substantially justified or other circumstances make an award of expenses unjust. Given the close call in this case, the Court finds the motion was substantially justified and declines to award expenses or attorney fees.

In addition to deciding the instant Motion, the undersigned will recuse herself from further proceedings in this matter, including the pending Motion to Extend Time to Complete Discovery. (Dkt. 37.) The decision to recuse was based upon information learned after all parties consented to proceed and after the hearing had been conducted on the instant motion.

# ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Defendants' Motion to Compel (Dkt. 25) is **DENIED**.

**IT IS FURTHER ORDERED THAT:**

Pursuant to 28 U.S.C. § 455(a), the undersigned Magistrate Judge hereby issues this order recusing herself from any further proceedings in this matter. The Clerk is requested to reassign this matter to another magistrate judge or to a district judge.



DATED: June 20, 2011

Honorable Candy W. Dale
Chief United States Magistrate Judge

**MEMORANDUM ORDER - 8**